IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

STEVEN TURNER,
    *Plaintiff*,

v.

ARCHER WESTERN CONTRACTORS, LLC
    *Defendant*.[1]

Civil Action No. ELH-17-2228

**MEMORANDUM**

In this tort suit, plaintiff Steven Turner, who is self-represented, sued defendant Archer Western Contractors, LLC ("Archer Western"), a private construction contractor that, at the relevant time, was performing work for the City of Baltimore.[2] ECF 2 ("Complaint"); *see also* ECF 64-1 at 15 (claim denial from City of Baltimore). Turner, an employee of Baltimore City's Department of General Services, Fleet Management Division (ECF 64-1 at 13), filed suit in the Circuit Court for Baltimore City. However, defendant timely removed the case to this Court, based on diversity jurisdiction under 28 U.S.C. § 1332. ECF 1; *see also* ECF 25.

In particular, Turner alleges that Archer Western sprayed "hazardous chemicals" onto Turner's two motor vehicles, which were "on the parking lot at work," damaging their paint and causing him to develop medical ailments. *Id.* at 1. Turner seeks $20 million in damages. *Id.* Although the Complaint does not contain specific counts, plaintiff appears to allege two claims of

---

[1] In the Complaint, plaintiff identifies the defendant as "Archer Western Company." ECF 2. But, defendant states that its proper name is Archer Western Contractors, LLC. ECF 1. I shall use defendant's nomenclature and direct the Clerk to correct the docket to reflect defendant's correct name.

[2] Plaintiff also sued Michael Sutton. However, the Complaint did not mention Sutton. *See* ECF 2. Accordingly, Sutton moved to dismiss. ECF 8. I granted the Motion by Memorandum and Order of September 18, 2017. ECF 26; ECF 27.

negligence. *Id.* The first is for the medical problems he has allegedly sustained. The second is for the alleged damage to plaintiff's two vehicles.

Following discovery, defendant moved for summary judgment under Fed. R. Civ. P. 56, on the ground that it was not negligent. ECF 62. The motion for summary judgment is supported by a memorandum of law (ECF 62-1) (collectively, "Motion") and over 300 pages of exhibits. Plaintiff opposes the Motion (ECF 64) ("Opposition") and filed two supplements. ECF 65; ECF 66. Defendant replied. ECF 67 ("Reply"). Thereafter, plaintiff filed four additional supplements. ECF 68; ECF 69; ECF 70; ECF 73.

Throughout the litigation, plaintiff has also submitted exhibits. They include the following: Maaco Collision Repair & Auto Painting damage estimates (ECF 2-1); plaintiff's medical records (ECF 36-1 at 1; ECF 38-1 at 13-15; ECF 51 at 3-5; ECF 64-1 at 3-9; ECF 65 at 1, 10-13; ECF 73); health insurance forms (ECF 28 at 6-13); slides on hazardous materials (ECF 36-1 at 2-4, 8-13); a community risk assessment guide on hazardous materials (ECF 36-1 at 5-7); a letter dated December 11, 2017, from plaintiff's employer, the Fleet Management Division of Baltimore City's Department of General Services (ECF 64-1 at 13); a claim denial from the City of Baltimore, dated July 27, 2016 (ECF 64-1 at 15); plaintiff's answers to defendant's interrogatories (ECF 65 at 3-8); and photos of plaintiff's vehicles (ECF 68 at 15-22).[3]

The Court is mindful of its obligation to construe liberally the pleadings of a pro se litigant, which are "held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *see also White v. White*, 886 F.2d 721, 722-23 (4th Cir. 1989). Nevertheless, no hearing is necessary to resolve the Motion. *See* Local Rule 105.6.

---

[3] Some exhibits were filed multiple times. For such exhibits, I shall cite the earliest filing.

For the reasons that follow, I shall grant the Motion as to the claim pertaining to plaintiff's personal injuries and deny it as to the claim pertaining to plaintiff's two vehicles.

## I. Factual Summary

Turner alleges that Archer Western sprayed a "hazardous chemical[]," "Vexcon-LL01 Certivex-Envio Cure White LAS8052-41-3," onto his two motor vehicles—a Ford F150 and a Hyundai Sonata. ECF 2 at 1; ECF 62-3 at 2 (plaintiff identifying the particular chemical); ECF 64-1 at 12 (description of vehicles). At the time, Turner worked for the City of Baltimore in the Fleet Maintenance Repair Shop, and he was located at the Back River Treatment Plant on "Eastern Blvd." ECF 64-1 at 12. The precise dates of the incidents are not clear. But, they appear to have occurred in late November of 2016. *See* ECF 62-4 at 2 (alleging sprayings on November 21 and 23, 2016); ECF 62-5 at 2 (alleging he "noticed a gray . . . spray paint and chemical spray on [the] vehicles" on November 25, 2016).

According to plaintiff, shortly after the incidents, the paint on his vehicles peeled, requiring an estimated $8,968.42 in repairs. ECF 2; ECF 2-1 at 1-2 (Maaco Collision Repair & Auto Painting damage estimates, dated December 5, 2016). As a result of the spraying, Turner also claims that "hazardous chemical[] [got] on [his] hands and skin" and face and also got into his eyes. ECF 2 at 1. Further, because the chemical entered both of his vehicles, Turner allegedly breathed in the hazardous chemical. *Id.* Moreover, as a consequence of Turner's exposure to the chemical, he maintains that he has developed several medical conditions, including breathing problems and problems with his eyes, skin, and throat. *Id.*; *see, e.g.*, ECF 64-1 at 2 (medical record describing Turner's rash); *id.* at 4 (medical record describing "[b]lurring of visual image" and "[c]hronic rhinitis"]).

For the purposes of the Motion only, Archer Western accepts plaintiff's allegations as undisputed facts. But, Archer Western maintains that there is no causal relationship between the sprayings and Turner's medical problems or between the sprayings and the damage to Turner's vehicles. ECF 62-1 at 2-4, 2 n.1.

## II.     Standard of Review

Under Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-24 (1986); *see also Formica v. Aylor*, 739 F. App'x 745, 754 (4th Cir. 2018); *Iraq Middle Mkt. Dev. Found. v. Harmoosh*, 848 F.3d 235, 238 (4th Cir. 2017). The nonmoving party must demonstrate that there are disputes of material fact so as to preclude the award of summary judgment as a matter of law. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585-86 (1986); *see also Gordon v. CIGNA Corp.*, 890 F.3d 463, 470 (4th Cir. 2018).

The Supreme Court has clarified that not every factual dispute will defeat a summary judgment motion. "By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original).

A fact is "material" if it "might affect the outcome of the suit under the governing law." *Id.* at 248. There is a genuine issue as to material fact "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*; *see Variety Stores, Inc. v. Wal-Mart Stores, Inc.*, 888 F.3d 651, 659 (4th Cir. 2018); *Sharif v. United Airlines, Inc.*, 841 F.3d 199, 2014 (4th Cir. 2016); *Raynor v. Pugh*, 817 F.3d 123, 130 (4th Cir. 2016); *Libertarian Party of Va. v.*

*Judd*, 718 F.3d 308, 313 (4th Cir. 2013). On the other hand, summary judgment is appropriate if the evidence "is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 252. But, "the mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Id.*

Notably, "[a] party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003) (quoting former Fed. R. Civ. P. 56(e)), *cert. denied*, 514 U.S. 1042 (2004); *see also Celotex*, 477 U.S. at 322-24. And, the court must view all of the facts, including reasonable inferences to be drawn from them, in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. Ltd.*, 475 U.S. at 587; *accord Variety Stores, Inc.*, 888 F.3d at 659; *Gordon*, 890 F.3d at 470; *Roland v. United States Citizenship & Immigration Servs.*, 850 F.3d 625, 628 (4th Cir. 2017); *Lee v. Town of Seaboard*, 863 F.3d 323, 327 (4th Cir. 2017); *FDIC v. Cashion*, 720 F.3d 169, 173 (4th Cir. 2013).

The district court's "function" is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249; *accord Guessous v. Fairview Prop. Inv., LLC*, 828 F.3d 208, 216 (4th Cir. 2016). Thus, in considering a summary judgment motion, the court may not make credibility determinations. *Jacobs v. N.C. Administrative Office of the Courts*, 780 F.3d 562, 569 (4th Cir. 2015); *Mercantile Peninsula Bank v. French*, 499 F.3d 345, 352 (4th Cir. 2007). Therefore, in the face of conflicting evidence, such as competing affidavits, summary judgment ordinarily is not appropriate, because it is the function of the fact-finder to resolve factual disputes, including

matters of witness credibility. *See Black & Decker Corp. v. United States*, 436 F.3d 431, 442 (4th Cir. 2006); *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 644-45 (4th Cir. 2002).

In sum, to avoid summary judgment, there must be a genuine dispute as to material fact. In *Iraq Middle Mkt. Dev. Found.*, 848 F.3d at 238, the Court reiterated: "A court can grant summary judgment only if, viewing the evidence in the light most favorable to the non-moving party, the case presents no genuine issues of material fact and the moving party demonstrates entitlement to judgment as a matter of law."

### III. Discussion

A federal court sitting in diversity must apply the law of the state in which the court is located, including the forum state's choice of law rules. *Colgan Air, Inc. v. Raytheon Aircraft Co.*, 507 F.3d 270, 275 (4th Cir.2007). Regarding tort claims, Maryland applies the law of the state where the alleged harm occurred ("lex loci delicti"). *See, e.g.*, *Proctor v. Washington Metropolitan Area Transit Auth.*, 412 Md. 691, 726, 990 A.2d 1048, 1068 (2010); *Erie Ins. Exch. v. Heffernan*, 399 Md. 598, 625, 925 A.2d 636, 651 (2007); *Phillip Morris, Inc. v. Angeletti*, 358 Md. 689, 744, 752 A.2d 200, 230 (2000). Because the alleged events took place in Maryland, the substantive tort law of Maryland governs plaintiff's negligence claim. *See Hauch v. Connor*, 295 Md. 120, 123-24, 453 A.2d 1207, 1209 (1983). Nevertheless, the Fourth Circuit applies the federal rules of procedure to determine "whether there is sufficient evidence to create a jury issue of those essential substantive elements of the action, as defined by state law[.]" *Fitzgerald v. Manning*, 679 F.2d 341, 346 (4th Cir.1982); *accord Jordan v. Iverson Mall Ltd. P'ship,* No. GJH-14-37, 2018 WL 2391999, at *5 (D. Md. May 25, 2018); *Young v. United States*, 667 F. Supp. 2d 554, 561 (D. Md. 2009).

In Maryland, "to assert a claim in negligence, the plaintiff must prove: '(1) that the defendant was under a duty to protect the plaintiff from injury, (2) that the defendant breached that duty, (3) that the plaintiff suffered actual injury or loss, and (4) that the loss or injury proximately resulted from the defendant's breach of the duty.'" *100 Inv. Ltd. P'ship v. Columbia Town Ctr. Title Co.*, 430 Md. 197, 212-13, 60 A.3d 1, 10 (2013) (quoting *Lloyd v. Gen'l Motors Corp.*, 397 Md. 108, 131-32, 916 A.2d 257, 270-71 (2007)) (emphasis omitted); *see Schultz v. Bank of Am., N.A.*, 413 Md. 15, 27, 990 A.2d 1078, 1086 (2010) ("In a negligence case, there are four elements that the plaintiff must prove to prevail: 'a duty owed to him [or her] (or to a class of which he [or she] is a part), a breach of that duty, a legally cognizable causal relationship between the breach of duty and the harm suffered, and damages.'") (quoting *Jacques v. First Nat. Bank of Maryland*, 307 Md. 527, 531, 515 A.2d 756, 758 (1986)) (alterations in *Schultz*).

"It is a basic principle that '[n]egligence is not actionable unless it is a proximate cause of the harm alleged.'" *Pittway Corp. v. Collins*, 409 Md. 218, 243, 973 A.2d 771, 786 (2009) (quoting *Stone v. Chicago Title Ins.*, 330 Md. 329, 337, 624 A.2d 496, 500 (1993)) (alteration in *Pittway*). A determination as to proximate cause involves not only a determination of cause-in-fact, but also a judgment as to whether an individual should "be held legally responsible for the consequences of an act or omission." *Peterson v. Underwood*, 258 Md. 9, 16, 264 A.2d 851, 855 (1970). "This determination is subject to considerations of fairness or social policy as well as mere causation." *Id.*

Thus, in Maryland, "[t]o be a proximate cause for an injury, 'the negligence must be 1) a cause in fact, and 2) a legally cognizable cause.'" *CR-RSC Tower I, LLC v. RSC Tower I, LLC*, 429 Md. 387, 429, 56 A.3d 170, 195 (2012) (quotations and citation omitted); *see Pittway Corp.*, 409 Md. at 243, 973 A.2d at 786 (quoting *Hartford Ins. Co. v. Manor Inn*, 355 Md. 135, 156-57,

642 A.2d 219, 230 (1994)). "The first step in the analysis . . . is an examination of causation-in-fact to determine who or what caused an action. The second step is a legal analysis to determine who should pay for the harmful consequences of such an action." *Pittway Corp.*, 409 Md. at 244, 973 A.2d at 786.

Maryland courts treat the first step as a "threshold inquiry of 'whether [the] defendant's conduct actually produced an injury.'" *Id.* (quoting *Peterson*, 258 Md. at 16-17, 264 A.2d at 855). When only the defendant's negligent act is at issue, causation-in-fact is satisfied if the "the injury would not have occurred absent or 'but for' the defendant's negligent act." *Pittway Corp.*, 409 Md. at 244, 973 A.2d at 786-87. When an injury is the result of two or more independent negligent acts, causation-in-fact is satisfied if it is 'more likely than not' that the defendant's conduct was a substantial factor in producing the plaintiff's injuries." *Id.* at 244, 973 A.2d at 787.

The second step, "whether the defendant's actions constitute a legally cognizable cause of the complainant's injuries," is a test of foreseeability. *Id.* at 245-46, 973 A.2d at 787-88. A court must "consider whether the actual legal harm to a litigant falls within a general field of danger that the actor should have anticipated or expected." *Id.* at 245, 973 A.2d at 787 (citing *Stone*, 330 Md. at 337, 624 A.2d at 500). If the harm was a foreseeable result of the defendant's negligent conduct, then the requirement for legal causation is generally met. *See Pittway Corp.*, 409 Md. at 246, 973 A .2d at 788. However, a court may limit liability where the injury is remote from the negligent conduct and the harm is out of proportion to the defendant's culpability. *See id.* at 246-47, 973 A.2d at 788.

When the alleged negligence turns on plaintiff's exposure to an allegedly toxic substance, the plaintiff must show both general and specific causation. *Westberry v. Gislaved Gummi AB*, 178 F.3d 257, 263 (4th Cir.1999) ("In order to carry the burden of proving a plaintiff's injury was

caused by exposure to a specified substance, the plaintiff must demonstrate the levels of exposure that are hazardous to human beings generally as well as the plaintiff's actual level of exposure."); *see, e.g.*, *Norris v. Baxter Healthcare Corp.*, 397 F.3d 878, 881 (10th Cir. 2005) ("The district court correctly noted that, in silicone breast implant litigation, plaintiffs must show both general and specific causation."); *Raynor v. Merrell Pharm., Inc.*, 104 F.3d 1371, 1376 (D.C. Cir. 1997) (discussing causation in toxic tort case in terms of general causation and specific causation).

"General causation addresses whether a particular substance can cause the kind of injury suffered by the plaintiff." *Sugarman v. Liles*, 460 Md. 396, 415, 190 A.3d 344, 355 (2018); *see also Rochkind v. Stevenson*, 454 Md. 277, 164 A.3d 254 (2017); *Blackwell v. Wyeth*, 408 Md. 575, 600, 971 A.2d 235 (2009). "Specific causation addresses whether the substance actually caused the plaintiff's injury." *Sugarman*, 460 Md. at 415-16, 190 A.3d at 355; *see, e.g.*, *Aventis Pasteur, Inc. v. Skevofilax*, 396 Md. 405, 442, 914 A.2d 113 (2007); *Wilhelm v. State Traffic Safety Comm'n*, 230 Md. 91, 99-100, 185 A.2d 715 (1962). "Plaintiff must first demonstrate general causation because without general causation, there can be no specific causation." *In re Lipitor (Atorvastatin Calcium) Mktg., Sales Practices & Prod. Liab. Litig.*, 185 F. Supp. 3d 786, 790 (D.S.C. 2016) (citing *Norris*, 397 F.3d at 881); *accord Knight v. Kirby Inland Marine Inc.*, 482 F.3d 347, 351–52 (5th Cir. 2007).

In exposure cases, expert witnesses often play a pivotal role. "Expert testimony is required when the subject matter is so particularly related to some science or profession that it is beyond the ken of the average layman." *SPS Ltd. P'ship LLLP v. Sparrows Point, LLC*, JFM-14-589, 2017 WL 3917153, at *10 (D. Md. Sept. 6, 2017) (quoting *Adams v. NVR Homes, Inc.*, 142 F. Supp. 2d 649, 654 (D. Md. 2001) (summary judgment granted after expert testimony was excluded, on basis that expert testimony was critical because the complaint was "so particularly related to professional

engineering that it [was] beyond the ken of the average juror")). "If the plaintiff presents no expert when one is needed, then the trial court 'may rule . . . that there is not sufficient evidence to go [to] the jury.'" *Jones v. State of Maryland*, 425 Md. 1, 26, 38 A.3d 333, 348 (2012) (citations omitted).

The case of *Aventis Pasteur, Inc. v. Skevofilax*, 396 Md. at 408-09, 914 A.2d at 115, is instructive as to the matter of expert testimony regarding causation. There, the parents of a minor brought a medical malpractice claim, alleging that the minor's "autism spectrum disorder was caused by thimerosal, a mercury-containing preservative used in pediatric vaccines" administered to the minor when he was an infant. *Id.* at 409, 914 A.2d at 115. However, the plaintiffs were unable to produce expert testimony as to causation. The defendants moved for summary judgment, arguing that the plaintiffs had failed to show any evidence as to causation. *Id.* at 442, 914 A.2d at 135. The trial court granted the motion, noting that the plaintiffs had "conceded [their] inability to produce an expert witness on the area of specific causation[.]" *Id.* at 409, 914 A.2d at 115.

The Maryland Court of Appeals affirmed. *Id.* at 443, 914 A.2d at 136. The court stated, *id.* at 441-42, 914 A.2d at 135:

> [T]here are, unquestionably, many occasions where the causal connection between a defendant's negligence and a disability claimed by a plaintiff does not need to be established by expert testimony. Particularly is this true when . . . the cause of the injury relates to matters of common experience, knowledge, or observation of laymen. . . . However, where the cause of an injury claimed to have resulted from a negligent act is a complicated medical question involving fact finding which properly falls within the province of medical experts (especially when the symptoms of the injury are purely subjective in nature, or where disability does not develop until some time after the negligent act), proof of the cause must be made by such witnesses.

The court observed that the plaintiffs' medical malpractice suit "would require the trial court to determine whether vaccines administered to [the] eight-year-old [minor] as an infant caused his autism." *Id.* at 442, 914 A.2d at 135. It stated, *id.*: "For such a complex medical question, a medical expert would be necessary to prove specific causation within a reasonable

degree of scientific certainty." Therefore, the court concluded that "[t]he trial court was correct in [its] legal conclusion that summary judgment was appropriate under the circumstances." *Id.* at 443, 914 A.2d at 135.

Conversely, an expert is not needed "when 'the alleged negligence is so obvious that the trier of fact could easily recognize that such actions would violate the applicable standard of care.'" *Jones*, 425 Md. at 26, 38 A.3d at 348 (citation omitted); *see also Shultz v. Bank of Am., N.A.*, 413 Md. 15, 29, 990 A.2d 1078, 1086 (2010) ("[W]e have explained that sometimes the alleged negligence, if proven, would be so obviously shown that the trier of fact could recognize it without expert testimony."); *Bean v. Dept. of Health & Mental Hygiene*, 406 Md. 419, 432, 959 A.2d 778, 786 (2008) ("[E]xpert medical opinion is required only 'when the subject of the inference [presented to the jury] is so particularly related to some science or profession that it is beyond the ken of the average layman' and is not required 'on matters of which the jurors would be aware by virtue of common knowledge[.]'") (citations omitted) (some alterations in *Bean*); *Carter v. Shoppers Food Warehouse MD Corp.*, 126 Md. App. 147, 158, 727 A.2d 958, 964 (1999) ("Expert testimony is not necessary when it relates to 'matters of which the jurors would be aware by virtue of common knowledge.'") (citation omitted); *Hartford Accident & Indem. Co. v. Scarlett Harbor Assocs. Ltd. P'ship,* 109 Md. App. 217, 257, 674 A.2d 106, 125-26 (1996) ("Expert testimony is not required . . . on matters of which the jurors would be aware by virtue of common knowledge."), *aff'd,* 346 Md. 122, 695 A.2d 153 (1997).

For example, "a temporal relationship between exposure to a substance and the onset of a disease or a worsening of symptoms can provide compelling evidence of causation." *Westberry*, 178 F.3d at 265; *accord Arias v. DynCorp*, 928 F. Supp. 2d 1, 8 (D.D.C. 2013), *aff'd,* 752 F.3d 1011 (D.C. Cir. 2014); *see, e.g.,* " *McCallum ex rel. McCallum v. United States*, Civ. A.

304CV442, 2005 WL 1048735, at *11-12 (E.D. Va. May 4, 2005) (holding that evidence that symptoms known to be associated with toxin poisoning exhibited three days after exposure and eyewitness testimony that the plaintiff was exposed to the toxin created a genuine issue of triable fact).

Here, Turner has alleged medical injuries as a result of his alleged exposure to Vexcon-LL01 Certivex-Envio Cure White LAS8052-41-3. The health effects of exposure to this chemical are not "matters of common experience, knowledge, or observation of laymen." *Aventis*, 396 Md. at 441-42, 914 A.2d at 135. Further, Turner neither expressly asserts nor presents any medical records indicating "a temporal relationship between exposure to a substance and the onset of a disease or a worsening of symptoms." *Westberry*, 178 F.3d at 265. Some medical records predate the alleged sprayings in late November 2016, while others postdate the incident. *See, e.g.*, ECF 64-1 at 5-8 (medical records dated March 2, 2016); *id.* at 3-4 (medical record dated November 17, 2017); *id.* at 1-2 (medical record dated January 3, 2018).

Notably, plaintiff has stated that he does not "intend to call" an expert witness. ECF 62-6 at 4. "Without [] an expert, [plaintiff's] claim[] must fail as a matter of law." *Aventis*, 396 Md. at 443, 914 A.2d at 136. In the context of this case, he establishes neither a general nor a specific causal relationship between the alleged exposure and his medical problems.

Turner also alleges that the sprayings caused the paint on his two automobiles to peel. In response, Archer Western maintains that Turner cannot establish a causal connection between the sprayings and the paint peeling without expert testimony. ECF 62-1 at 10. I am not persuaded by this contention.

Archer Western allegedly sprayed a chemical on the exterior of Turner's vehicles on November 26, 2016. Just ten days later, Maaco Collision Repair & Auto Painting estimated the

exterior of those same vehicles suffered $8,968.42 in paint damage. ECF 2-1 at 1-2. A jury could credit Turner's testimony as to the sequence of events, and it could also rely on its own common sense and experience to find proximate cause.[4]

## IV. Conclusion

For the forgoing reasons, I shall grant the Motion in part and deny it in part. Specifically, I shall grant the Motion as to the claim of negligence pertaining to plaintiff's medical problems and deny the Motion as to the claim of negligence pertaining to plaintiff's two automobiles.

An Order follows, consistent with this Memorandum.


Date:   January 7, 2019                         /s/
                                        Ellen Lipton Hollander
                                        United States District Judge

---

[4] To be sure, defendant may present testimony disputing that it released the chemical. It may also present expert testimony to refute causation. The Court merely points out that Turner has presented an issue for the finder of fact.